Personal Information Sheet

Checked By _____

Date Checked _____

Date of Birth 04/24/90

Drivers License # ▮▮▮▮▮▮▮

Expiration Date ▮▮▮▮▮▮▮

Marital Status single

State FL

[Florida Driver License image — KRISTEN AMBER SCHOFIELD, HGT: 5-05]

Name (Last) Schofield (First) Kristen

Social Security Number ▮▮▮ ▮▮ ▮▮▮▮   Stage Name Amber

Cell Phone ▮▮▮▮▮▮▮▮▮▮   Facebook _____

E-Mail Address _____

Home Address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Height 5'5   Weight 140   Hair Color Brown

Position Applied For Dancing

**Previous Employment**

Company 2001 odessy Location Dale mabry   Start/End Dates _____

Company Diamond Dolls Location clearwater   Start/End Dates _____

Company _____ Location _____ Start/End Dates _____

Sign [signature]   Date: 1/20/18


Official Use Only:

Start Date _____ Shift _____

# PERFORMER LICENSE
# AND TEMPORARY SPACE LEASE AGREEMENT

**NOTICE: THIS IS A LEGAL CONTRACT THAT AFFECTS THE LEGAL RIGHTS OF THE PARTIES TO THIS AGREEMENT- READ IT!**

BUSINESS NAME **gold club** _____ (the "BUSINESS" or "CLUB")

## I. PERFORMER INFORMATION

PLEASE MAKE SURE THAT ALL INFORMATION IS PRINTED IN A LEGIBLE AND CLEAR MANNER

LAST NAME: **Schofield**

FIRST NAME: **Kristen**

DATE OF BIRTH: **04/24/90**

STAGE NAME: **Amber**

ADDRESS: ███████████████████████████
     STREET     CITY     STATE     ZIP CODE

PRIMARY PHONE: ███████ PHONE: _____ ADDITIONAL

DRIVERS LICENSE: ███████████ (LIST ISSUING STATE AND NUMBER, ATTACH A COPY)

SECONDARY FORM OF IDENTIFICATION: _____

NOTICE: All ID must comply with House Bill 989, requiring the Club to maintain a copy of the Applicant's Driver's License, State or Federal Government Issued Photo ID, and a record of the verification of the validity of identity and age verification document with the issuer.

SOCIAL SECURITY NUMBER: ███████

EMERGENCY CONTACT INFORMATION: _____

DATE THIS FORM COMPLETED: _____

### II. ACKNOWLEDGEMENTS OF VOLUNTARY AND MEANINGFUL REVIEW OF THIS AGREEMENT

PERFORMER ACKNOWLEDGES THAT PERFORMER HAS READ AND REVIEWED THIS AGREEMENT, INCLUDING THE INCLUDED TERMS AND CONDITIONS, IN ITS ENTIRETY, and THAT PERFORMER HAS BEEN GIVEN AN OPPORTUNITY TO ASK THE CLUB ANY QUESTIONS OR EXPRESS ANY CONCERNS ABOUT THIS

1

PERFORMER 

---

**DOCUMENT, AND THAT <u>PERFORMER HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HIS OR HER CHOICE</u> PRIOR TO ENTERING INTO THIS AGREEMENT. PERFORMER ACKNOWLEDGES THAT, BY SIGNING THIS AGREEMENT, PERFORMER UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.**

**THIS AGREEMENT REPLACES AND SUPERSEDES ANY PRIOR AGREEMENT BETWEEN THE PARTIES, AND SINCE THIS AGREEMENT IS THE MOST ACCURATE DESCRIPTION OF THE NATURE OF THE RELATIONSHIP OF THE PARTIES, AND REPRESENTS WHAT THE "MEETING OF THE MINDS" HAS BEEN SINCE THE PARTIES ESTABLISHED THEIR RELATIONSHIP, THE TERMS AND CONDITIONS HEREIN ARE DEEMED EFFECTIVE FROM THE DATE OF ANY PRIOR AGREEMENT OR RELATIONSHIP BETWEEN THE PARTIES, SHOULD ONE EXIST.**

### III. THE AGREEMENT

**THIS AGREEMENT**, is made this _30th_ day of _January_, 20_18_, by and between _Krista Schofield_ hereinafter referred to as "Business," and _____, hereinafter referred to as "PERFORMER."

WHEREAS: The Business has the authority to License and/or lease time, stage space, VIP rooms, dressing rooms and stage access to PERFORMER at its nightclub by contractual arrangements;

WHEREAS: PERFORMER is a self-employed, independent entity engaged in PERFORMER's independently established business, and PERFORMER *elects not to be classified as an employee*, and agrees to maintain performance characteristics consistent with non-employee status;

WHEREAS: PERFORMER desires to obtain stage use and time at facilities under contract with Business via a nonexclusive license/lease (the "License"), from time to time, to entertain audiences in order that PERFORMER may earn income in the form of retaining the Business' "dance fees," which would, if the PERFORMER was classified as an employee, be the property and income of the Business, as well as gratuities from the Business' patrons derived from providing entertainment appearances; it is AGREED that the PERFORMER and the Business enter into the following AGREEMENT, and, that in consideration of the mutual covenants contained herein, the parties agree as follows:

**GENERAL TERMS:**

*NATURE OF RELATIONSHIP:*

<u>The Business and Performer each acknowledge and agree that the relationship of the parties hereto is that of The Business as "Licensor" and "Lessor" and Performer is a Licensee and Temporary Space Lessee and no employee/employer relationship exists between the Business and Performer. Nothing in this Agreement shall be construed so as to create an employee/employer relationship between the parties hereto. Performer shall be solely responsible for obtaining and maintaining, at Performer's sole cost and expense, all necessary business licenses and permits and insurance including but not limited to, health, disability and worker's compensation and for paying all federal, state and local taxes and contributions imposed upon any income earned by Performer at the Business.</u>

2

PERFORMER 

<u>The Business and Performer acknowledge and represent that if the relationship between them was that of employer and employee, the Business would be required to collect, and would retain, all Performance Fees paid by customers to Performer. Performer acknowledges and agrees that if the relationship were one of employer/employee, all Performance Fees would be the property of the Club. THE PARTIES ACKNOWLEDGE AND REPRESENT THAT PERFORMER'S RIGHT TO OBTAIN AND KEEP PERFORMANCE FEES PURSUANT TO THIS LICENSE IS SPECIFICALLY CONTINGENT UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF THE BUSINESS BEING A LICENSOR AND TEMPORARY SPACE LESSOR AND PERFORMER BEING A LICENSEE AND TEMPORARY SPACE LESSEE.</u>

<u>In order to comply with applicable tax laws and to assure that the Business is not unjustly harmed and that Performer is not unjustly enriched, the Business and Performer agree that if upon any ruling or decision of an arbitrator, court or other tribunal with jurisdiction over the matter that the relationship is one of employer/employee, Performer shall surrender, reimburse and pay to the Business, all Performance Fees received by Performer at any time she performed on the Premises - all of which would otherwise have been collected and kept by the Business had they not been retained by Performer under the terms of this License and Temporary Space Lease - and shall immediately provide a full accounting to the Business of all tip income which he/she received during that time;</u>

<u>Any Performance Fees that Performer fails to repay to the Business are deemed service charges to the customer and as such the Business shall be entitled to offset any wage obligations by any amount not returned by the Performer. This provision shall apply to any such dance fees, regardless of whether the Business makes such fees part of its gross income at the time the Performer receives such dance fees from a Business patron.</u>

The Business is interested only in providing temporary space under this AGREEMENT and the manner and means of performing such professional services are under the sole control of the Performer, subject to the covenants contained herein, and agreed as follows:
The benefits provided by the Business to its employees, including, but not limited to, compensation insurance and unemployment insurance *are not available from the Business to the Performer.* The Performer may present or practice services for others during those periods when he/she is not performing under this AGREMENT within the Business. The Business may, during the term of this Contract, also allow others to lease temporary space to other Performers to perform professional services for Business' patrons that the Performer herein performs, with *no right of exclusivity* directly or indirectly stated or inferred.

ENGAGEMENT:

The Business hereby allows the professional services of the PERFORMER to occur at the Business establishment or any other location that has employed the services of the Business. The PERFORMER agrees to utilize the business premises according to the terms and conditions as agreed upon by the Business and the PERFORMER in this AGREEMENT.

BUSINESS WILL HONOR PERFORMER'S CHOSEN LEASE SCHEDULE:

In the agreed utilization of the Business' premises herein contemplated by the PERFORMER, the PERFORMER has the sole authority to control and direct her service performances with the Business being interested only in the leasing space within the Business premises to enable the

3

PERFORMER 

PERFORMER to engage in her independent profession pursuant to this Agreement. Because of the demand on the Business' space and resources, for the benefit of all parties, a set schedule will be made available to the PERFORMER which will be honored to prevent crowding or complications caused by an overabundance of PERFORMER's. The agreed upon minimum lease period, as established through Lease Schedules, will be maintained by the parties, and the utilization of the premises, as contemplated herein shall comply with the covenants stated herein.

**MODEL RELEASE** License to use image. In further consideration for the Club or Business' grant of this license. Licensee agrees that Club or Business, or its affiliates, may use Licensee's image for the purpose of advertising her performance, the Club or Business' activities, or for any other lawful purpose, including on the internet or the Club or Business' websites.

**HOLD HARMLESS.** In further consideration to the Club for entering into this License Agreement, Performer for herself, her heirs, Personal Representatives, successors and assigns hereby covenants and agrees that neither the Club, it shareholders, officers, directors or employees shall be liable to Licensee with regard to any injury to Licensee's person or property which may occur while Licensee is on the premises of the Club, unless caused by the intentional or willful act of any of the foregoing persons. Further, Licensee agrees to inform Company immediately if she is harassed, assaulted or propositioned to commit an unlawful act by any patron, contractor, licensee or employee of Company.

## THE BUSINESS IMPOSES NO RULES OR RESTRICTIONS, BUT PERFORMER AGREES TO COMPLY WITH ALL APPLICABLE LAWS:

The PERFORMER agrees to comply with all federal, state, and municipal laws, rules and regulations pertaining to her performances and/or activities in the Business that are now or may in the future become applicable to the PERFORMER, and if she does not comply with such laws, she is solely liable for her actions and in no way, will the Business approve of such actions occurring while she is performing under the terms of this AGREEMENT. As required by governmental regulation, sexual activities and any use of controlled substances are strictly prohibited, as are any violations of other State or local laws. Any violations of these laws may result in termination of any lease or license granted by this AGREEMENT and permanent prohibition from the business premises.

PERFORMER recognizes that the Business holds one or more valuable governmental licenses, approvals, and/or permits for the conduct of business on the Premises and that such licenses, approvals, and/or permits may be the subject of actions to have such entitlements revoked, canceled, suspended or withdrawn as a result of allegations of certain illegal, immoral, or otherwise objectionable behavior on the Premises by PERFORMER or any other contracting party. PERFORMER acknowledges that the Business will experience significant economic damage and irreparable harm if such revocation, cancellation, suspension or withdrawal occurs. Accordingly, PERFORMER represents and warrants to the Business that PERFORMER has never been convicted of any crime involving moral turpitude; including, but not limited to, prostitution and PERFORMER agrees that PERFORMER shall not engage in any of the following activities on or about the Business Premises: Lewd acts; gambling; soliciting for prostitution, or engaging in prostitution; consuming alcoholic beverages if under the age of 21 years; possessing or using drugs or other illegal or controlled substances; possessing contraband or weapons; including, without limitation, knives and guns; fighting or otherwise engaging in

4

PERFORMER 

physical or verbal confrontations with any other person of any description on the Business' premises; leaving the Business Premises with any customer or patron of Business for any unlawful activity. Engaging or attempting to engage in any other conduct or activity which has the effect of causing any governmental entity to attempt the revocation, cancellation, suspension or withdrawal of licenses, permits or other governmental authorizations or approvals required by the Business to conduct business on the Premises in the ordinary and customary manner will result in termination of any lease or license granted by this AGREEMENT and permanent prohibition from the Business premises.

### **INDEPENDENT NATURE OF THE RELATIONSHIP:**

The Business shall engage in no conduct that would intentionally violate any state or federal wage or labor law, including but not limited to the Fair Labor Standards Act or any applicable state wage and hour or employment regulations or laws. All aspects of this AGREEMENT are also designed to protect the public health, safety, and welfare, as a basis to the use of the premises by the Temporary Space Lessee, and deemed necessary and appropriate to ensure the provisions set forth above. PERFORMER agrees to be bound by, and otherwise adhere to each and every policy and custom articulated herein by Business in connection with the Business' premises. Additionally, the following policies are agreed to by the parties:

### **PERFORMER'S WARDROBE AND COSTUMES:**

PERFORMER shall supply his/her own costumes and wearing apparel of any kind and nature, and the Business shall have no responsibility or liability in connection therewith. Acts and Routines are at the discretion of the PERFORMER, subject to the conduct provisions of this AGREEMENT requiring compliance with the law.

### **NATURE OF PERFORMANCE:**

Business shall have no right to direct or control the nature, content, character, manner, or means of PERFORMER's performance. PERFORMER acknowledges and agrees that his/her performance may include live nude, semi-nude or costumed entertainment consistent with the type of entertainment regularly legally performed at the Business premises.

### **LEASE RENTAL PAYMENTS:**

In exchange for the use of PERFORMER's use of the Business premises shall pay a rental lease fee as shown in the attached Exhibit, depending on variables such as time of day and saturation level of patronage. The PERFORMER must secure and reserve all requested times, which may include a minimum daily or periodic appearance, and PERFORMER agrees to perform during all hours of each shift for which she has reserved the Business' premises. The rental is due and payable on the day of each performance.

### **ACKNOWLEGEMENT OF SOURCE OF PERFORMER'S INCOME:**

Any and all income to be received by the PERFORMER shall be from customers directly, in the form of an "assignment" of dance fees for performances which, if the PERFORMER was an

5

PERFORMER 

employee, would be the property of the Business, and any gratuities over and above the specified dance fees. Said income will be attributed to the equivalent of earning at least "minimum wage" as required by any applicable regulation, but will not be paid directly from the Business. Business is a conduit between the performer and customer and at times an exchange in script, funny money, or gift certificates, if such policy is implemented.

**PERFORMER HAS NO EXCLUSIVITY REQUIRED:**

PERFORMER is free to perform at other establishments, without restriction, provided that she adheres to the schedule reservations of performance that she has requested and agreed to perform.

**PERFORMER IS OF LAWFUL AGE:**

The undersigned PERFORMER represents that he or she is of legal age, over the age of 18 (eighteen) years, and legally capable to enter in AGREEMENTS.

**RELIANCE ON LEGAL DECISIONS TO SUPPORT THE NON-EMPLOYEE RELATIONSHIP:**

Both the Business and the PERFORMER rely upon the judicial decisions addressing similar Lessor/License agreements such as this one, in the decisions of *Marlar Inc. v. United States*, and *J3R, Inc. v. United States,* among other decisions, which recognize the validity of similar lease agreements as that manifest herein.

**PERFORMER IS RESPONSIBLE FOR HER OWN TAX REQUIREMENTS:**

As an independent entity, the PERFORMER acknowledges that he/she is required to file his/her own federal, state and local income tax returns and is fully responsible for reporting her earnings and the payment of all income taxes due and owing on such returns.

**PERFORMER'S PROMISE TO NOTIFY BUSINESS OF DESIRE TO BE CLASSIFIED AS AN "EMPLOYEE," AND TO RETURN DANCE FEES RETAINED, IF CHANGE OF DESIGNATION IS DESIRED:**

PERFORMER acknowledges and agrees, that in the event that any governing federal or state agency determines that the relationship between the Business and PERFORMER is other than that of a Business and Lessee/Licensee, PERFORMER agrees to reimburse and otherwise hold Business harmless from any and all moneys determined to be due to PERFORMER should such designation be deemed improper. If any legal action is initiated or supported by PERFORMER by any assertion that the relationship is other than that of Business and Lessee/Licensee, then, in addition to the reimbursement hereto set forth, PERFORMER shall pay to Business all additional costs and expenses incurred by Business, or any principal thereto, including actual

6

PERFORMER 

and reasonable attorney's fees in defense of any such action which PERFORMER is or becomes a party to such action. Additionally, as a "condition precedent" to any claim of "misclassification" asserted by or on behalf of the PERFORMER, the PERFORMER must demand, in writing, that she be classified and treated as an employee, prior to bringing any action pursuing any remedy for any alleged misclassification.

### ATTORNEY'S FEES:

In the event that a lawsuit or other legal services must be initiated or defended to enforce any aspect of this agreement, the prevailing party shall have a right to collect from the other party to this agreement any reasonable attorney's fees costs and/or expenses incurred in same, unless recovery of such fees are prohibited by local, state or federal law..

### AGREEMENTS OUTSIDE OF THIS AGREEMENT:

This AGREEMENT contains the complete agreement between the parties and shall, as of the effective date hereof, supersede all other agreements between the parties.

### LEGAL AUTHORITY:

The PERFORMER hereby warrants that she is of legal age and has the right to contract in her own name, that she has read this document entitled **PERFORMER LICENSE AND TEMPORARY SPACE LEASE AGREEMENT** document prior to its execution and that she is fully familiar with the contents thereof. This document shall be binding on PERFORMER and her heirs, legal representatives and assigns.

### RELEASE AND WAIVER:

PERFORMER also acknowledges that PERFORMER utilizes the Business premises under this AGREEMENT entirely upon her own risk and responsibility and in consideration of her voluntary participation in the terms and conditions of this AGREEMENT. PERFORMER does hereby for herself, her heirs, executors and administrators remise, release, and forever discharge any and all officers, agents, and employee's heirs or assigns, acting officially or otherwise, from any and all claims, demands, actions or causes of action on account of any loss or injury to PERFORMER which may occur from any cause during the term of this AGREEMENT, in the utilization of the Business premises, as well as any operations incident thereto.

### GRIEVANCE AND ARBITRATION AGREEMENT

The Business, which includes its parent corporation, affiliates, subsidiaries, divisions, successors, assigns and the current and former employees, officers, directors, and agents (hereafter collectively referred to as "the Business") seeks to work with its performers, temporary space lessees, licensees, independent contractors, and employees to resolve differences as soon as possible after they arise. Often times, differences can be eliminated through internal discussions.

7

PERFORMER 

To facilitate dispute resolution through open communication, we have developed a binding grievance procedure, which ultimately ends in arbitration of disputes that are not resolved through the grievance process. **Use of the Business's Grievance and Arbitration Agreement ("Agreement") binds both you, your heirs, administrators, executors, successors and assigns (hereinafter collectively referred to as "you" or "your") and the Business to grieve and arbitrate disputes, in lieu of litigating in court.**

### THE AGREEMENT TO GRIEVE AND ARBITRATE: Overview

You are required to grieve and then, if necessary, arbitrate any and all disputes, claims, or controversies ("claim") against the Business as defined above including, but not limited to, all claims arising out of your employment, the separation of employment or any other dispute, including any claim that could have been presented to or could have been brought before any court. This Agreement to grieve and then, if necessary, arbitrate includes, but is not limited to, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; any state or local anti-discrimination laws; or any other federal, state, or local law, ordinance or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses or relief, including attorney's fees. All claims which could be raised before a court must be raised by the time of the arbitration and the arbitrator shall apply the law accordingly. **As a condition precedent to arbitration, you must have exhausted all prior steps in the Business's grievance procedures, which are set forth below.**

Likewise, the Business reciprocally and in consideration of this Agreement is required to grieve and then, if necessary, arbitrate any claim against you and also agrees to be bound by the terms of this Agreement regarding any matter covered herein or any other dispute it may have with you (unless otherwise stated in a written Agreement between the parties that explicitly limits the obligations herein). Claims not covered by this Agreement are claims for workers' compensation benefits and for unemployment compensation benefits, although mention of same does not concede applicability to the relationship described herein.

### THE GRIEVANCE PROCESS

### 1. General Principals of Confidentiality Which Apply To The Grievance And Arbitration Process

To the extent consistent with adequate investigation and appropriate corrective action, all of the grievance proceedings are confidential processes, and any information relating to these proceedings may not be disclosed except as needed in the ordinary course of business. Also all arbitration proceedings will remain confidential between the parties (and arbitrator).

### 2. Grievance Procedures For Employees To Follow

a) <u>Step One</u>

If you feel you have a problem, you should present the situation to the manager on duty or an

8

PERFORMER 

owner. Past experience shows that most problems can be settled by simple examination and discussion of the facts.

You are not required to present the situation to the manager on duty or the owner if you do not feel comfortable discussing the situation with those individuals. Under these circumstances, you can inform the Club's attorney, Luke Lirot, at 727-536-2100, and/or via email to Luke2@lirotlaw.com.

### b)   **Step Two**

If you are dissatisfied with the manager's or your supervisor's response or you elect to bypass Step One, you may take the problem to the Club's attorney, Luke Lirot, at 727-536-2100, and/or via email to Luke2@lirotlaw.com. To do this, you must complete a Dispute Resolution Form, which is available from any manager. The form requires that you set forth your grievance in writing, describing in as much detail as you can recall every act and event giving rise to your grievance, every witness and document which you believe supports your position, and the corrective measures you seek. Either a manager or the Club's attorney, Luke Lirot, will respond to your step two grievance, in writing, within ten (10) calendar days of your submission of a fully completed Dispute Resolution Form. The Business may extend this deadline by fifteen business days. The submission of a step two Dispute Resolution Form, upon receipt by the Business, postpones all limitation periods during the step two process.

The Business, in its sole and unreviewable discretion, may, in lieu of the Step Two appeal process, elect to require you to mediate your dispute. If the Business elects mediation, it must pay for all costs of the mediator and will seek to schedule the mediation within sixty (60) calendar days of submission of your Step Two Appeal Form. The mediation must occur within a seventy five mile radius of your current residence. If the Business elects mediation and it fails, you may proceed to Step Three - arbitration. The GRIEVANCE PROCESS SET FORTH ABOVE IS A CONDITON PRECEDENT TO ANY PARTICIPATION IN ARBITRATION.

### c)   **Step Three**

If you are dissatisfied with the results of Step Two appeal and/or mediation and your claim is one to which our Arbitration Agreement below applies, you have thirty (30) calendar days from receipt of the Step Two determination to file for final and binding arbitration in accordance with this Agreement. Only claims that could be brought in a court are subject to arbitration.

**THE ARBITRATION PROCESS**

The decision or award of the arbitrator shall be final and binding upon the parties. The arbitrator shall have the power to award any type of legal or equitable relief available in a court of competent jurisdiction including, but not limited to, attorney's fees, to the extent such damages are available under law.   Because any arbitral award may be entered as a judgment or order in any court of competent jurisdiction, any relief or recovery to which you may be entitled upon any claim (including those arising out of employment, separation of employment, or any claim of

9

PERFORMER 

unlawful discrimination) shall be limited to that awarded by the arbitrator.

Subject to the postponement of limitation periods set forth herein, any claim for arbitration will be timely only if brought within the time in which an administrative charge or complaint would have been filed if the claim is one which could be filed with an administrative agency. If the arbitration claim raises an issue which could not have been filed with an administrative agency, then the claim must be filed within the time set by the appropriate statute of limitation.

<u>The parties agree that, subject to the exhaustion of the Grievance Process set forth above this Agreement is subject to binding arbitration</u> pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any and all issues arising out of any State or Federal Wage and Hour or Fair Labor Standards Act issues, or any other regulatory, administrative or other issue, including any disputes that may have arisen <u>at any time during the relationship between the parties,</u> will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association, <u>FLORIDA</u> branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). THE PARTIES MAY AGREE TO UTILIZE ANOTHER QUALIFIED ARBITRATION SERVICE. The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section.

<u>EACH PARTY SHALL BEAR ITS OWN FEES AND COSTS IN ARBITRATION, absent any legal or administrative rule to the contrary.</u> The arbitration provision contained herein shall be self-executing and shall remain in full force after expiration or termination of this Agreement. In the event, any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be HILLSBOROUGH COUNTY, FLORIDA. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section in which event the provisions of this Section shall control, so long as allowed by law.

<u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.</u> ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. <u>THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA.</u> THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS AGREEMENT, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

10

PERFORMER ___

**PERFORMER UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME PERFORMER IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF, PERFORMER SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.**

**MISCELLANEOUS:**

This Agreement constitutes the entire understanding of the parties. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement. No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement. If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. The Club's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement.

The PERFORMER acknowledges that he/she has received and reviewed this document in its entirety and has received a copy of same, as evidenced by the signatures below.

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT on this _20th_ day of _January_, 20_18_.

THIS DOCUMENT AFFECTS YOUR LEGAL RIGHTS.

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE THOROUGHLY REVIEWED EVERY WORD IN THIS AGREEMENT, THAT YOU HAVE HAD AN OPPORTUNITY TO PREENT THIS TO AN ATTORNEY IF ANY PART OF THIS AGREEMENT IS UNCLEAR, AND THAT YOU HAVE DONE SO OR ARE WAIVING THAT RIGHT, AND THAT YOU DO NOT NED ANY ADDITIONAL TIME TO REVIEW OR CONSIDER THIS AGREEMENT AND ARE SIGNING IT KNOWINGLY, VOLUNTARILY AND LAWFULLY:

_/s/_                                                    _1/20/18_
PERFORMER Signature                      DATE
Print Name: _Kristen Schofield_

11

PERFORMER _KS_

Witness Signature _____

Print Name: _____

Describe and Attach Picture ID of TSL

_____ _____
BUSINESS REPRESENTATIVE    DATE 1/20/18

Witness Signature _____
Print Name: _John Gonzalez_

12
PERFORMER ___KJ___

# **Grievance Form**

| Administrative Information |
|---|

Name: _____   Date: _____

Agreement date: _____

Home Mailing Address: _____

Work Mailing Address: _____

Phone: _____   Email: _____

| Date, Time, and place of event leading to grievance: |
|---|
|  |

| Detailed account of occurrence (include names of persons involved, if any): |
|---|
|  |

| Please state policies, procedures, or guidelines that you feel have been violated: |
|---|
|  |

1

| Proposed solution to grievance: |
|---|
|  |

The grievant should retain a copy of this form for his or her records. The signature below indicates that you are filing a grievance, and any information on this form is truthful.

_____   _____
Signature                                                                                                Date

_____   _____
Received by                                                                                           Date

### Grievance Procedures To Follow

**Step one:**

If you feel you have a problem, you should present the situation to the manager on duty or an owner. Past experience shows that most problems can be settled by simple examination and discussion of the facts.

You are not required to present the situation to the manager on duty or the owner if you do not feel comfortable discussing the situation with those individuals. Under these circumstances, you can inform the Club's attorney, Luke Lirot, at 727-536-2100, and/or via email to Luke2@lirotlaw.com.

**Step two:**

If you are dissatisfied with the manager's or your supervisor's response or you elect to bypass Step One, you may take the problem to the Club's attorney, Luke Lirot, at 727-536-2100, and/or via email to Luke2@lirotlaw.com. To do this, you must complete a Dispute Resolution Form, which is available from any manager. The form requires that you set forth your grievance in writing, describing in as much detail

2

as you can recall every act and event giving rise to your grievance, every witness and document which you believe supports your position, and the corrective measures you seek. The Club's attorney, Luke Lirot, will respond to your step two grievance, in writing, within ten (10) calendar days of your submission of a fully completed Dispute Resolution Form. The Business may extend this deadline by fifteen business days. The submission of a step two Dispute Resolution Form, upon receipt by the Business, postpones all limitation periods during the step two process.

The Business, in its sole and unreviewable discretion, may, in lieu of the Step Two appeal process, elect to require you to mediate your dispute. If the Business elects mediation, it must pay for all costs of the mediator and will seek to schedule the mediation within sixty (60) calendar days of submission of your Step Two Appeal Form. The mediation must occur within a seventy five mile radius of your current residence. If the Business elects mediation and it fails, you may proceed to Step Three - arbitration. The GRIEVANCE PROCESS SET FORTH ABOVE IS A CONDITON PRECEDENT TO ANY PARTICIPATION IN ARBITRATION.

**Step Three:**

If you are dissatisfied with the results of Step Two appeal and/or mediation and your claim is one to which our Arbitration Agreement below applies, you have thirty (30) calendar days from receipt of the Step Two determination to file for final and binding arbitration in accordance with this Agreement. Only claims that could be brought in a court are subject to arbitration.