THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION

STEFFANIE A., aka ATHENA, an
individual and KRISTEN SCHOFIELD, an
individual,

                Plaintiff,

    vs.

GOLD CLUB TAMPA, INC., a Florida
Corporation; MICHAEL TOMKOVICH,
an individual; DOE MANAGERS 1-3; and
DOES 4-100, inclusive,

                Defendants.

) Case No.: 8-19-CV-03097-VMC-TGW
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## DEFENDANTS' VERIFED RESPONSE IN OPPOSITION TO PLAINTIFF, KRISTEN SCHOFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

    Defendants, GOLD CLUB TAMPA, Inc. ("GOLD CLUB") and MICHAEL TOMKOVICH, an individual ("TOMKOVICH") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 56 and M.D. Fla. L. R. 3.01, hereby file their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, as to the issue of whether Plaintiff, KRISTEN SCHOFIELD, was misclassified as an independent contractor, and states as follows:

### I. PRELIMINARY STATEMENT

    Plaintiff is an exotic dancer ("Entertainer") who formerly performed at Defendants' gentlemen's club (the "Club"). Specifically, Plaintiff utilized the Club's premises to provide fully stage dances, table dances, and private dances, among other forms of entertainment, for their customers and the Club's customers at the Club. In order to be able to use the Club's premises, Plaintiff entered into a written Dancer Licensing Agreements with Defendant (the "Agreement"). Through the Agreement, Defendants granted Plaintiff a license to utilize the Club's stages, dressing rooms, and property for their performances and to retain their dance fees and tips in exchange for paying modest fees to Defendant Club. Plaintiff was not an employee of Defendants, nor was she an independent contractor. She was a licensee allowed to utilize the entirety of the

1

Club premises to entertain the Club's patrons and keep her dance fees and tips, the dance fees which would have otherwise been the property of the Club if the Plaintiff was, in fact, an employee. Defendants did not control how Plaintiff performed, when Plaintiff performed, or even if Plaintiff performed. Per the Agreement, Plaintiff was not compensated by Defendants, but instead received the fees and tips that Plaintiff directly negotiated from "her" customers, the Club's customers that dealt independently with the Plaintiff to negotiate the "dance fee" and provide voluntary tips to the Plaintiff, entirely outside any participation from the Club. Notwithstanding her Agreement, Plaintiff has brought this action seeking to recover minimum and overtime wages for each hour she performed in the Club, while ignoring the significant fees and tips she was paid by customers for these same performances, simply because courts around the country have been finding that exotic dancers should have been classified as employees at other clubs under other business models

The simple fact is the relationship between Plaintiff and Defendants in this case is very different from the relationship in other cases where exotic dancers were determined to be employees of a club. At Defendant's Club, the relationship between Entertainers and the Club intentionally was structured to comply with the facts in those cases where courts have found dancers to be independent contractors/licensees and to avoid the exercise of "control" and other factors found fatal in other cases. While Plaintiff has and undoubtedly will again cite to a number of cases finding exotic dancers to be employees, not all courts have made such a ruling, and each case must be reviewed on its own merits. Given the unique, undisputed facts in this case, Plaintiff in the instant case, who enjoyed the flexibility and tax benefits of not being classified as an employee, is identical to the dancers found to be non-employees by courts based on a review of the relevant factors. Because the undisputed record evidence demonstrates that Plaintiff cannot establish an employer-employee relationship between her and the Club, as a matter of law, summary judgment is inappropriate.

## II. STATEMENT OF MATERIAL FACTS

1. GOLD CLUB is a restaurant and adult gentlemen's club, serving food and drinks in addition to providing entertainment. See Ex. 1, (Tomkovich Declaration) at ; see also

Exhibit 2, Deposition Transcript of Michael Tomkovich, (herein Tomkovich Depo) at 33:23-250; 34: 1-10; 85:17-22.

2.  Tomkovich is the owner of Gold Club. See Ex 1, (Tomkovich Decl. at ).

3.  John Sanchez, Shawn Tougas and Ken Wood are the managers currently at GOLD CLUB. See ECF DOC 55-6 Tomkovich Depo at 29:15-23.

4.  Performers are asked to provided their identification, check they have not been arrested for any felonies, or crimes of moral turpitude and the performers sign a Performance Agreement/Lease Agreement. See ECF DOC 55-6, Tomkovich Depo, at 12:23-25;13:1-2; 79:1-10; 111:1-5.

5.  Plaintiff signed Performance Agreement/Lease Agreement which outlines the relationship between GOLD CLUB and Plaintiff, and clearly identifies that SCHOFIELD is not an employee under this agreement. See. Doc 55-6 p. 32- 44.

6.   GOLD CLUB provides many forms of entertainment, and the dancers are considered one of the elements that attract people but not the primary element. See ECF DOC 55-6, Tomkovich Depo at 32: 17-25; 33:1-25; 34 1-2; 76:14-19; 98:11-25.

7.  GOLD CLUB has a bar, food, drinks, sports, and pool tables. See ECF DOC 55-6, Tomkovich Depo at 32: 17-25; 33:1-25; 76:14-19; 98:11-25. See ECF DOC 55-5, John Sanchez Deposition Transcript (herein Sanchez Depo) at 31:25;32:1-2.

8.  GOLD CLUB does not regulate the outfits that the performers wear. See ECF DOC 55-6, Tomkovich Depo, at 81: 20-23. See ECF DOC 55-5, Sanchez Depo, at 34:17-24.

9.  GOLD CLUB performers do not have schedules, they can come and go as they please. "Dancer can work for an hour." See ECF DOC 55-6, Tomkovich Depo, at 103:16-17. See ECF DOC 55-5 Sanchez Depo at 52:11-20.

10. GOLD CLUB does not fine or punish performers for leaving "early," or failing to perform at the club for any period of time; and termination has only been for breaking the law. See ECF DOC 55-6, Tomkovich Depo, at 103:18-21: See ECF DOC 55-5, Sanchez Depo, at 46:5-18.

11. Performers do not have to abide by any employee or specified rules, policies, or procedures, other than the laws and regulations mandated by the State of Florida and the City of Tampa. See ECF DOC 55-6, Tomkovich Depo, at 79:22-25:80:1;

12. Performers are in control of the music that plays, when they perform, who they perform for, where they perform and control what they are allowed to wear, within the legal limitations of the state of Florida, and City of Tampa. See. ECF DOC 55-6, Tomkovich Depo, at 38:5-15;39:1-3;103:16-17 104:4-18; 105:21-24. ECF DOC 55-5, Sanchez Depo, at 34:17-24; 52:11-20.

13. "Performers" are allowed take breaks at their leisure. See ECF DOC 55-6, Tomkovich Depo, at 105:25; 106:1-2.

14. Performers have the discretion to negotiate the price of dances, VIP rooms, and any other dances provided at the club. See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 62: 9-18.

15. Clients are charged the rate of the room, and the dancer is able to make however much money she would like to charge over the base rate assessed to the customer. See ECF DOC 55-6, Tomkovich Depo, at 62:9-18. See ECF DOC 55-5, Sanchez Depo at 42:10-12.

16. Performers additionally have input on the charges made for dance prices and other policies related to them. See ECF DOC 55-6, Tomkovich Depo, at 38:5-15. (A: Yes. And it was combined with input from the girls and the management and then what other places sell.

4

Q: You said it was combined input. Did you have some kind of town hall meeting with the dancers to discuss a policy change? A: we talked with them individually…. It became a happy medium for everyone.).

17. The Lease fee only changes during the time of day, it is not based on how much time the performer spends, and it is not a penalty but a static number. See ECF DOC 55-6, Tomkovich Depo, at 23:13-20;47:1-4; 24:2-25. See ECF DOC 55-5, Sanchez Depo, at 36:2-18.

18. Tomkovich has an ongoing agreement with Fair Labor Standards Agency, which permits GOLD CLUB to contract for performers and not treat them as employees, as long as they make the equivalent of minimum wage, and is seeking only to continue to comply with those parameters. See Ex.2, Tomkovich Depo at 50:2-8; 52:11-22; 53:5-9;57:5-9. See Ex.3 Sanchez Depo at 26:17-25;27:1.

## III. MEMORANDUM OF LAW

### A. SUMMARY JUDGMENT STANDARD

"A motion for summary judgment should only be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Delgado v. U.S. Dep't of Transp.,* 709 F. Supp. 2d 1360, 1364 (S.D. Fla. 2010) (citing Fed. R. Civ. P. 56(c)). "By its very terms, this standard provides that 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine issue of material fact.'" *Delgado*, 709 F. Supp. 2d at 1364 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is "material" if it might affect the outcome of the case under the governing law. *Id.* (citations omitted). Plaintiff "may not simply rest upon the allegations of their Complaint. Rather, [they] have a duty to present affirmative evidence in order to properly support the approval

of a motion for summary judgment." *Jeudy v. Holder*, No. 10-22873-CV, 2011 U.S. Dist. LEXIS 128746, at *10 (S.D. Fla. Nov. 7, 2011) (citation omitted).

In deciding a summary judgement motion, the Court must view the facts in the light most favorable to the nonmoving party. *Davis v. Williams*, 451 F.3d 759,763 (11th Cir. 2006). The Court must also resolve all ambiguity and draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ARGUMENT

### A. The Undisputed Facts Demonstrate Plaintiff Is Not Entitled To Summary Judgment As She Does Meet The Classification As An Employee Under The Flsa

The FLSA only applies to employees, not licensees or independent contractors. *See Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782, 782 (11th Cir. 2006). To determine if an employer-employee relationship exists, this circuit utilizes an "economic realities test." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). "At the heart of ... the economic realities test, [is] a 'fact intensive' test requiring 'individualized analysis . . . to determine whether [a person] is an independent contractor or an employee for FLSA purposes.'"*Peña v. Handy Wash, Inc.*, 2015 U.S. Dist. LEXIS 180653, at *30-31 (S.D. Fla. May 22, 2015) (citing *Demauro v. Limo, Inc.*, 2011 U.S. Dist. LEXIS 1229, at *11 (M.D. Fla. Jan. 3, 2011)). In conducting this individualized analysis, the courts of this circuit evaluate the following non-exhaustive considerations: (1) the permanency of the employment relationship; (2) the degree of skill required for rendering services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id.*

No criterion by itself is controlling, rather, courts give weight to each criterion "according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." *Perdomo v. Ask 4 Realty & Mgmt., In*c., 298 Fed. Appx. 820, 821 (11th Cir. 2008) (*citing Antenor v. D&S Farms*, 88 F.3d 925, 928-33 (11th Cir. 1996)). Also, the determination of employment status under the FLSA is a question of law. *See Villarreal v. Woodman*, 113 F.3d 202, 205 (11th Cir. 1997). For the reasons set out more fully below, Plaintiff cannot be classified as an employee under the economic realities test and, consequently, the wage requirements under the

FLSA and the FMWA are inapplicable. As such, summary judgment in favor of Plaintiff is not warranted, as a matter of law.

## B. Plaintiff Cannot Demonstrate She is an Employee Under the Economic Realities Test

In the case at bar, Plaintiff cannot establish an employer-employee relationship under the economic realities test because, *inter alia*: (1) Plaintiff had significant control over the manner in which their work was performed, as each Plaintiff individually controlled and set her own schedule, decided what types of entertainment to offer, and chose her own stage persona, choreography, costumes, music, the customers for whom she will dance and most other aspects of her activities at the Club [See. ECF DOC 55-6, Tomkovich Depo, at 38:5-15;39:1-3;103:16-17;104:4-18; 105:21-24. ECF DOC 55-5, Sanchez Depo, at 34:17-24; 52:11-20.]; (2) Each Plaintiff controlled her own opportunities for profit and loss (*e.g.*, deciding how much to charge for entertainment; negotiating fees with customers, deciding how often, how long, and on what shifts to dance; deciding how many private dances to host, etc.) [See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20;38:5-15; 62: 9-18.]; (3) there was no permanent relationship between Defendants and Plaintiff (*e.g.*, Plaintiffs could come and go as they pleased and could even stop showing up to perform at the Club without notice and without repercussion) [See ECF DOC 55-6, Tomkovich Depo, at 103:16-17. See ECF DOC 55-5 Sanchez Depo at 52 11-20.]; (4) Plaintiffs invested their own monies in the outfits and accessories they needed to do their work [See ECF DOC 55-6, Tomkovich Depo, at 81: 20-23. See ECF DOC 55-5, Sanchez Depo, at 34:17-24.]; and (5) Plaintiffs' services were not an integral part of the Club's business, which primarily earns revenue from the sale of food and drinks [See ECF DOC 55-6, Tomkovich Depo at 32: 17-25; 33:1-25; 76:14-19; 98:11-25. See ECF DOC 55-5, John Sanchez Deposition Transcript (herein Sanchez Depo) at 31:25;32:1-2.]

As already discussed, if the Plaintiff was not an employee of Defendants, then the requirements of the FLSA and FMLWA would be inapplicable. *See Matson v. 7455, Inc.*, 2000 U.S. Dist. LEXIS 23013 (D. Or. Jan. 14, 2000) (finding summary judgment in favor of the defendants, reasoning that the plaintiff dancer was, *inter alia*, paid exclusively through fees and tips for table dances, income which was largely dependent on the plaintiff's own skill to attract customers and not on any salary or hourly wage set by the defendants); *Hilborn v. Prime Time Club, Inc.*, 2012 U.S. Dist. LEXIS 188881 (E.D. Ark. July 12, 2012) (granting the defendant

summary judgment where the dancers: (1) exercised significant control over the manner in which their performances were conducted; (2) experienced certain risks of profit or loss beyond that which normal employees experience, (3) invested in equipment and materials attendant to their performances, (4) possessed and exhibited special skills with respect to activities at the nightclub albeit none of the skills exhibited required a certification, and (5) did not exhibit a degree of permanence representative of employer-employee relationships, instead enjoying the freedom to work for others).

### C. Plaintiff Had Significant Control Over The Nature and Degree In Which Her Work Was Performed

To determine whether the nature and degree of control factor suggests an employer-employee relationship, particularly in the context of exotic dancers, courts in this circuit and others have looked to rules and regulations imposed on dancers regarding scheduling, performance style, behavior, appearance, and pricing, as well as the club's control over factors that might financially impact the dancers. *See, e.g. Clincy v. Galardi S. Enters.., Inc.,* 2011 U.S. Dist. LEXIS 10040, *45 (N.D. Ga. Sept. 7, 2011); *Reich V. Circle C. Invs., Inc.,* 998 F.2d 324 (5th Cir. 1993). In *Matson, supra,* the court found that the exotic dancers/adult entertainers were not employees and were properly classified as independent contractors under the economic realities test where:

a) the plaintiff entertainer paid a house fee to perform "[f]or use of building, stage, dressing room, bar, staff, facilities and access to defendants' clientele";

b) the club designated certain six-hour shifts for entertainers to perform;

c) the club set the price of dances;

d) the fees paid to entertainers in exchange for dances, along with tips paid in excess of the mandatory fees, were the "dancers' sole form of compensation;"

e) the court observed that the plaintiff earned an hourly compensation in the form of tips and dance fees, on average, "far beyond the required state and federal minimum wage;"

f)   the plaintiff was subject to certain "'house rules' implemented by the defendants concerning the conduct expected of dancers at the club" including provisions imposed to avoid criminal liability. These rules were enforced with warnings and, ultimately, fines;

g)   the club fined entertainers for failing to notify the club that they would be late to their scheduled shift; and

h)   if the plaintiff did not pay an outstanding fine, the club would not permit her to perform until the fine was paid.

See *Matson*, 2000 U.S. Dist. LEXIS 23013, *2, *4. The district court in *Matson* held that "[a]n application of the [economic reality] factors. . . indisputably leads to the conclusion that the plaintiff was an independent contractor 'who [was], as a matter of economic fact, in business with [herself].'" *Matson*, 2000 U.S. Dist. LEXIS 23013, *4.

Similarly, in *Hilborn*, another district court granted summary judgment in favor of the defendant, an adult entertainment club, holding that the exotic dancers/entertainers who performed there were independent contractors, and not employees covered by the FLSA. *See Hilborn*, 2012 U.S. Dist. LEXIS 188881, *5. The record evidence in *Hilborn* demonstrated that:

a.   the entertainers' days and hours were set according to their availability, subject to the demands, availability, and capacity at the club;

b.   the entertainers paid their own taxes, provided their own supplies and were responsible for their own expenses;

c.   the entertainers were not limited in the total hours, days, and weeks that they performed at the club;

d.   only one quarter of entertainers performed at the club for more than two years, one half performed for several months to less than a year and many took significant breaks of time between the blocks of time that they performed at the club;

e.   the entertainers themselves determined for whom to dance;

f.   the entertainers were permitted to select their own dress and choreographed their own performances;

g.   the entertainers were responsible for their own customer development; and

h.   many of the entertainers performed at other clubs during the same period that they performed at the defendant club.

*Id.* at 3. The court concluded that based upon the above evidence, the plaintiff entertainers "were not employees as defined by the FLSA." *Id.* at *4.

The facts in the instant case demonstrate that the Plaintiff is even <u>less</u> likely to be considered an employee than the exotic dancers in *Matson* and *Hilborn*, as it is undisputed that Plaintiff exerted significantly more control, if not complete control, over her performances/work at the Club than the dancers in *Matson* and *Hilborn*. [See. ECF DOC 55-6, Tomkovich Depo, at 38:5-15;39:1-3;103:16-17 104:4-18; 105:21-24. ECF DOC 55-5, Sanchez Depo, at 34:17-24; 52:11-20.] Indeed, they showed up to perform when they wanted, they left when they wanted, they wore what they wanted, they charged what they wanted, they did whatever they wanted to do to make money while on the Club's premises (*e.g.*, table dances, stage dancers, private dances, talking to customers, or no dances at all), and other than for violations of the law there are no rules, regulations or policies dictating the behavior or conduct of the performers. [ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20;38:5-15;39:1-3;62:9-18;79:22-25; 80:1; 81: 20-23; 103:18-21; 103:16-17;104:4-18; 105:21-24; See also ECF DOC 55-5 Sanchez Depo at 34:17-24; 42:10-12; 46:5-18; 52:11-20.]. As Licensees, Defendants had very little to no control over any aspect of the Plaintiff's "work" at the Club. Performers have also been asked for input and consensus when adjusting the pricing. See ECF DOC 55-6, Tomkovich Depo, at 38:5-15.

## D. **Plaintiff Had Complete Control Over Her Schedules**

Unlike employees whose work hours are placed on a schedule by an employer, the Plaintiff here were not required to work on specific days or during specific hours. [See ECF DOC 55-6, Tomkovich Depo, at 103:16-17. See ECF DOC 55-5 Sanchez Depo at 52:11-20.] Indeed, Plaintiff did not have to provide Defendants with any notice of what days or hours they would work, they arrived when they wanted, worked for however long they wanted, and left when they wanted. [See ECF DOC 55-6, Tomkovich Depo, at at 38:5-15;39:1-3; 103:16-17; 103;18-21;104:4-18; 105:21-24; See also ECF DOC 55-5, Sanchez Depo, at 34:17-24; 46:5-18; 52:11-20.] Facts of this nature, such as the amount of flexibility an individual has in creating her work schedule, have been critical factors in other courts' analysis in determining the "degree of control" individuals have over their work (and, hence, whether an individual is an "employee"). *Cf. Taylor Blvd. Theatre, Inc. v. U.S.*, 1998 U.S. Dist. LEXIS 9355, *2 (W.D. Ky. May 13, 1998) (granting summary judgment to club regarding tax treatment where dancers who signed lease agreements had complete control over their work schedule, only needing to notify club one week in advance of desired dancing days).

In the instant case, Plaintiff <u>never</u> needed to provide advance notice to the Club of when she intended to perform. [See ECF DOC 55-6, Tomkovich Depo, at 103:16-17. See ECF DOC 55-5 Sanchez Depo at 52:11-20.]. Plaintiff simply showed up at whatever time she felt like performing, pursuant to their license Agreement. [See ECF DOC 55-6, Tomkovich Depo, at 103:16-17. See ECF DOC 55-5 Sanchez Depo at 52:11-20.]. Plaintiff did not have a schedule of when she were expected to arrive at the Club to perform, nor did they submit proposed schedules to the Club. [See ECF DOC 55-6, Tomkovich Depo, at 103:16-17. See ECF DOC 55-5 Sanchez Depo at 52:11-20.]. Plaintiff, like other independent contractors/licensees, worked at her own convenience, whenever she chose to work. *See Browning v. CEVA Freight, LLC*, 885 F. Supp. 2d 590, 600 (E.D.N.Y. 2012) (holding that the plaintiffs were independent contractors where they "could select their assignments based upon what time of day they chose to work and whether they thought it was worth the time or money.") The ability to determine when they would work, and for how long they would work, as well as to determine what type of work they would do and for which customers they would perform, gave Plaintiffs control over their opportunity for profit and loss, as it logically follows the more often they showed up to perform, the more money they would make. [See. ECF DOC 55-6, Tomkovich Depo, at 38:5-15;39:1-3;103:16-17; 104:4-18; 105:21-24. ECF DOC 55-5, Sanchez Depo, at 34:17-24; 52:11-20.]

### E. <u>Plaintiff Had Complete Control Over What She Did at the Club</u>

Plaintiff, like the other performers, had complete control over what she did when at the Club. [See ECF DOC 55-6, Tomkovich Depo, at at 38:5-15;39:1-3; 103:16-17; 103;18-21;104:4-18; 105:21-24; See also ECF DOC 55-5, Sanchez Depo, at 34:17-24; 46:5-18; 52:11-20]. They could decide whether they danced on stage, whether they danced on tables, whether they performed personal dances, whether performed for a particular customer, and whether they danced at all. [See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 62: 9-18; See also ECF DOC 55-5, Sanchez Depo at 42:10-12]. "You can dance however you want," "It was up to me," "I decided what to do." <u>Id.</u>

The degree of control a club has over dancers' "job duties" and performance style factors heavily into the determination of the dancers' employment status. For example, the defendant club in *Clincy* provided detailed rules on when an entertainer could remove her clothing depending on what money was placed on stage. *Clincy*, 2011 U.S. Dist. LEXIS 100400, at *15 (finding dancers

to be employees where club exerted significant control over dancers, including a requirement to retain clothing until a certain amount of money is received for each piece of clothing). Unlike the dancers in *Clincy*, however, as well as other cases where exotic dancers were found to be employees, Plaintiff in the instant case had complete creative control over her performances and appearance. [See. ECF DOC 55-6, Tomkovich Depo, at 38:5-15;39:1-3;103:16-17; 104:4-18; 105:21-24. ECF DOC 55-5, Sanchez Depo, at 34:17-24; 52:11-20.]. Plaintiff wore whatever she chose to wear, including outfits that they wore when performing at other clubs. [See ECF DOC 55-6, Tomkovich Depo, at 81: 20-23. See ECF DOC 55-5, Sanchez Depo, at 34:17-24.]. Plaintiff chose what songs she would dance to, how she would dance to them, whether she would dance on stage, whether she would dance on tables, whether she would entertain customers in the champagne room, among other choices. [ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 38:5-15;39:1-3; 62: 9-18; 103:16-17; 104:4-18; 105:21-24. ECF DOC 55-5, Sanchez Depo, at 34:17-24; 52:11-20.]. Plaintiff, like all performers, never performed any of the job duties performed by Defendants' employees, such as waitresses, bartenders, kitchen staff, cleaning staff, maintenance staff, and floor hosts. [See ECF DOC 55-6, Tomkovich Depo, at 79:22-25:80:1.] Plaintiff was never asked to execute restrictive covenants, like some of Defendants' employees, as Plaintiff was free to work for any other establishment. [See ECF DOC 55-6, Tomkovich Depo at 39:1-3: 78:16-17].

The undisputed record evidence clearly demonstrates that Defendants did not impose *any* job duties on Plaintiff, and Plaintiff was free to do whatever lawful activities she pleased while performing at the Club. [See ECF DOC 55-6, Tomkovich Depo, at at 38:5-15;39:1-3; 103:16-17; 103;18-21;104:4-18; 105:21-24; See also ECF DOC 55-5, Sanchez Depo, at 34:17-24; 46:5-18; 52:11-20]. The only limitations Defendants placed on Plaintiff related to safety and compliance with the law, violations of which could lead to the revocation of the Club's licenses – not disciplinary action. [ECF DOC 55-6, Tomkovich Depo, at 79:22-25:80:1;103:18-21: See ECF DOC 55-5, Sanchez Depo, at 46:5-18].

### F. Plaintiff Had Complete Control Over Her Appearance

Plaintiff also had complete control over her physical appearance when performing at Defendants' Club. [See ECF DOC 55-6, Tomkovich Depo, at 81: 20-23. See ECF DOC 55-5, Sanchez Depo, at 34:17-24]. Unlike in cases where exotic dancers were found to be employees,

Plaintiff in the instant case was not required to wear a uniform. [Id.]. They "could wear whatever they wanted" to wear. Id. Also unlike other cases brought by exotic dancers who were found to be employees, Plaintiff in the instant case was not required to use the Club's House Moms or Make-Up artists before performing. Plaintiff could do her own make-up or choose not to wear make-up. [See ECF DOC 55-6, Tomkovich Depo, at 81: 20-23. See ECF DOC 55-5, Sanchez Depo, at 34:17-24]. Plaintiff's control over her appearance directly correlated to her control over her potential for profit and loss (*i.e.*, if Plaintiffs chose to perform without make-up and wore a costume that covered most of their body, they likely would earn less than Entertainers who wore tiny costumes and flattering makeup – it was their choice).

### G. Plaintiff Had Complete Control Over Her Interactions With Customers

Courts also scrutinize the influence clubs exercise over the dancers' relationship with customers when evaluating the degree of control factor of the economic realities test. In instances where courts found that dancers were employees, the clubs controlled with specificity how the dancers interacted with their customers and dance performances. *See, e.g., Clincy v. Galardi S. Enters.., Inc.,* 2011 U.S. Dist. LEXIS 10040, *50 (N.D. Ga. Sept. 7, 2011) (finding that the defendant club exercised a significant amount of control over the entertainers where the rules required dancers to work a scheduled shift and where the club set the cost of table-side and VIP dances).

Defendants, however, had no such requirements. Plaintiff was free to determine for which customers she would dance, what type of dances or forms of entertainment she would offer, for how long she would perform, and whether to dance at all. [See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 62: 9-18; See also ECF DOC 55-5, Sanchez Depo at 42:10-12.]. In fact, Plaintiff had her own customer base, performed her own marketing/client outreach to customers, and had the opportunity for her own "regular" customers who specifically came to the Club just to see Plaintiff perform. [Id.].

### H. Plaintiff Had Significant Control Over Her Pricing and Rates

A significant distinction between Plaintiff in the instant case and the exotic dancers found to be employees in other wage cases is that Plaintiff in this matter had significant control over the pricing and rates she charged customers for the entertainment she provided at the Club. [[See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 62: 9-18; See also ECF DOC 55-5,

Sanchez Depo at 42:10-12.]. Entertianers had complete discretion to charge whatever rate they wanted to charge in the champagne room. [See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 62: 9-18; See ECF DOC 55-5, Sanchez Depo at 42:10-12]. They could negotiate whatever rate they wanted to charge for table dances. [Id.] Thus, Plaintiff controlled her potential for profit and loss while working at the Club, and had the opportunity to earn a rate well in excess of the minimum wage, notwithstanding the modest fees that were paid to Defendants in exchange for the license permitting them to use the Club's premises. *Cf. Déjà Vu Entertainment Enters. Of Minn., Inc. v. U.S.*, 1 F. Supp. 2d 964 (D. Minn. 1998) (finding that rental fee paid by lessee dancers not dispositive of employer-employee relationship for tax purposes). The modest fees charged by Defendants were not a function of control but simple economy. *Id.* at 965-68(finding that dancers were not employees despite the fact that managers kept track of the number of individual dances and calculated the rental fee based on that information).

### I. Plaintiff Controlled Her Own Opportunity for Profit and Loss

Plaintiff's significant degree of control over her opportunity for profit or loss clearly demonstrates she cannot be classified as an "employee." Unlike employees, independent contractors/licensees have a greater opportunity for profit or loss because they can increase or decrease their earning potential by manipulating factors which are not in a normal employees' control (*e.g.* when and how often to show up to work and what activities to perform while at work). Thus, in determining whether an individual is properly classified as an independent contractor or licensee, courts analyze which party controlled the major determinants of the individual's ability to make a profit. *See Herman v. Express Sixty-Minutes Delivery Srvs., Inc.*,161 F.3d 299, 328 (5th Cir. 1998) (noting that the plaintiff delivery drivers controlled the customer volume and amount charged to customers, having the ability to choose how much they wanted to work and knowing which jobs were most profitable); *see also Freund*, 185 Fed. Appx. at 782.

Similarly, **Plaintiff in the instant case had the complete discretion and control to determine when she would show up to work, how often she would show up to work, how long she would stay to perform at the Club, which customers she would entertain, and what type of entertainment to offer to customers (*e.g.*, table dances or more lucrative private dances in the champagne room; (which would be more profitable)** [See ECF DOC 55-6, Tomkovich Depo, at 32:8-13; 34:18-20; 62: 9-18; See also ECF DOC 55-5, Sanchez Depo

at 42:10-12]. This degree of control is atypical of an employer-employee relationship. *Freund*, 185 Fed. Appx. at 782. Indeed, if all employers permitted their employees to show up to work whenever they chose to, and to perform whatever duties the employees want to perform while on the job, complete chaos would exist in the business world.

Also, unlike a typical employer-employee relationship, Plaintiff was not paid by the Club. [SOF ¶¶ 32, 33-36] Plaintiff was paid directly from her customers. [SOF ¶ 32] Indeed, Defendants did not even collect Plaintiff's dance fees or tips from customers on Plaintiff's behalf, nor did Defendants ever charge customers fees for Plaintiff's services, only other charges directly to the customer, exclusive of the Plaintiff's fees and/or tips [SOF ¶ 35]. Consequently, Defendants did not provide Plaintiff with an IRS Form W-2, thus Plaintiff reported her own income to the IRS. [SOF ¶ 36].    *Cf. Deboissiere v. Am. Modification Agency*, 2010 U.S. Dist. LEXIS 113776, at *8-9 (E.D.N.Y. Oct. 22, 2010) (noting that "if a plaintiff signs a tax return 'under penalty of perjury' that declares independent contractor status. . . such a tax return may significantly impede the plaintiff's ability to claim employee status for purposes of filing an overtime or minimum wage claim.'") (quotation omitted).

Finally, Plaintiff's performances necessarily included the skill of exotic dancing. Plaintiff received absolutely <u>no</u> training from Defendants' Club. [ECF DOC 55-6 Tomkovich Depo at 84:6-18]. In order to make money at the Club, Plaintiff had to rely on her own skill set and ability to generate income. In enforcing the First Amendment rights of exotic dancers, courts have noted the level of skill, creativity and artistic ability necessary to perform the art of exotic dancing. *See Schultz v. City of Cumberland*, 228 F.3d 831, 839 (7th Cir. 2000). Plaintiff incorporated her own style, skill and creativity and was not restricted or limited beyond the limits of the law.

**J. Plaintiff Invested in The Outfits and Accessories She Needed to do Her Work**

Another key factor courts consider in analyzing the economic realities test is whether the individual invested in the tools and materials needed to perform their work. *See, e.g., Hilborn*, 2012 U.S. Dist. LEXIS 188881, *2. In the instant case, Plaintiff spent her own money to invest in the outfits and accessories she needed to perform her work at the Club. Plaintiff purchased the costumes that she chose to wear, as well as her make-up and shoes. [Id.]. Employees, by contrast, generally do not invest their own monies into their employers' businesses to generate profit for their employers. By providing for themselves the tools and accessories necessary to perform their work at the Club, Plaintiff demonstrates that she had far more control over her opportunity for

15

profit and loss than employees, and she was properly classified as a licensee/lessee and not an employee. *See Hilborn*, 2012 U.S. Dist. LEXIS 188881, *2 (finding that dancers "invested in equipment and materials attendant to their performances" and, therefore, were not employees).

### K. There Was No Permanent Relationship Between Defendants and Plaintiff

The undisputed facts demonstrate there was no permanency in the relationship between Plaintiff and Defendants which could even remotely resemble that of an employer-employee relationship. [ECF DOC 55-6, Tomkovich Depo, at 12:23-25;13:1-2; 79:1-10; 111:1-5]. In addition to the above cited evidence that Plaintiff could come and go as she pleased, without having any type of work schedule and without having to provide the Club with any notice of her intent to work on a given night. Plaintiff could work at competitor clubs or work any other job in conjunction with Gold Club or elsewhere. Employees, by contrast, generally are not permitted to work for their employers' competitors during the employment period. Additionally, Plaintiff could stop working at the Club if they wish, and she could simply stop showing up for work without any notice. [ECF DOC 55-6, Tomkovich Depo at 13:1-2; 39:1-3]. If she wanted to return to perform at the Club months later, she simply showed up, again without notice. [ECF DOC 55-6, Tomkovich Depo at 60:2-15; 87:6-10]. As long as the Plaintiff's license had not been revoked for engaging in illegal activity at the Club, she was permitted to perform, no matter how much time had passed since she last appeared at the Club. It is axiomatic that this type of flexibility and control does not lend itself to an employer-employee relationship, and courts routinely recognize the impermanence of exotic dancers' relationships with the clubs where they perform. *See, e.g., Circle C.*, 998 F.2d at 32829 ("exotic dancers tend to be itinerant..."); *Clincy*, 2011 U.S. Dist. LEXIS 100440, at *61 (same).

### L. Plaintiff's Services Were Not an Integral Part of the Club's Business

Although Entertainers are a component of Defendants' business, they are not integral to the Club. [See ECF DOC 55-6, Tomkovich Depo at 31:25;32:1-2; 32:17-25; 33:1-25; 34 1-2; 76:14-19; 98:11-25]. The Club's primary revenue comes from the sale of food and liquor. [See ECF DOC 55-6, Tomkovich Depo at 33:10-25; 34:2; 97:25; 98:1-20]. The fees paid to Defendants by Entertainers represent less than 10% of Defendants overall revenue. Generally entertainers will pay lease fee between $5-10 depending on what time of day it is and dancers

16

unless they use the VIP or Champagne Rooms. [ECF DOC 55-6, Tomkovich Depo at 24:17-25; 30:1-25; 31:1-25; 37:5-12].

Entertainers, moreover, are not the sole attraction at the Club, as the Club also offers customers access to premium food, sporting events, and music from live DJs in order to encourage customers to visit the Club and purchase food and liquor. [See ECF DOC 55-6, Tomkovich Depo at 31:25;32:1-2; 32:17-25; 33:1-25; 34 1-2; 76:14-19; 98:11-25]. The Club subscribes to "[t]he NFL package, the MBA All Access, the hockey, whatever kind of sporting even that we could get, we buy . . . MMA fighting, everything," as well as promotional night for cuisine including prime rib and steaks, which is used to market GOLD CLUB to customers. [See ECF DOC 55-6, Tomkovich Depo at 31:25;32:1-2; 32:17-25; 33:1-25; 34 1-2; 76:14-19; 98:11-25]

In sum, the undisputed record evidence clearly demonstrates that Plaintiff cannot establish she had an employer-employee relationship with Defendants. Plaintiff entered into the written Agreement with Defendants through which Defendants granted her a license to utilize the Club's premises to perform their work, through which they retained their fees and tips that Plaintiff generated, in exchange for a modest fee. Plaintiff has admitted she did not have a work schedule, she had no set job duties, she had complete control over the type of entertainment/work she offered at the Club, she set her own rates, negotiated her own fees, developed her own customers, could simultaneously work at competitor clubs, and she came and left when she wanted. Plaintiff had complete control over her opportunities for profit, and loss and she invested her own monies into her work, all of which indicate there was no employer-employee relationship; rather, Plaintiff was in business for herself. These factors have led other courts to conclude that exotic dancers are not employees under the economic realities test, and the Court should so find here, for all of the above reasons. *See Hilborn*, 2012 U.S. Dist. LEXIS 188881, *5; *Matson*, 2000 U.S. Dist. LEXIS 23013, *6. Accordingly, this Court should deny the partial summary judgment in favor of Plaintiff as appropriate and warranted as a matter of law.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants respectfully request that the Court enter an order DENYING the Plaintiff's Partial Summary Judgment in its entirety, in addition to awarding such other and further relief as the Court deems just and proper.

17

## **DECLARATION OF VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, MICHAEL TOMKOVICH, declare as follows:

1.      I am over the age of eighteen and am competent and fully qualified and competent to make this declaration.

2.      This declaration is based on my personal knowledge and is made in support of Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.

3.      I am the owner and representative of Defendant, GOLD CLUB TAMPA, INC., a Florida corporation.

4.      I affirm that all allegations contained in the Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment are true and correct.

5.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19TH day of January, 2020.


*Michael Tomkovich*
_____
MICHAEL TOMKOVICH




Dated: January 19, 2021                         Respectfully Submitted,

                                                /s/Luke Lirot
                                                _____
                                                Luke Lirot, Esq.
                                                Florida Bar Number 714836
                                                LUKE CHARLES LIROT, P.A.
                                                2240 Belleair Road, Suite 190
                                                Clearwater, Florida 33764
                                                Telephone: (727) 536-2100
                                                Facsimile: (727) 536-2110
                                                *Attorney for the Defendants*
                                                luke2@lirotlaw.com  (primary e-mail)
                                                sean@lirotlaw.com(secondary e-mail)
                                                krista@lirotlaw.com(secondary)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties in this case.

/s/Luke Lirot_____
Luke Lirot, Esquire
Florida Bar Number 714836